right away with 22-766 Ezrasons v. Travelers Indemnity Company. Attorney Giordano, you're reserving two minutes for rebuttal, is that correct? Yes, Your Honor. When you're ready, counsel, you may proceed. Thank you very much. Good morning. May it please the court, I am Fred Giordano from the law firm of K&L Gates. I represent the appellant, Ezrasons, Inc., in this case. I'm here today to present a motion to approve the grant of summary judgment to the appellee, The Travelers Indemnity Company, and denial of summary judgment to Ezrasons, and instead to grant summary judgment to Ezrasons and deny that summary judgment relief to travelers. Ezrasons seeks the recovery of the full $600,000 limit for a $600,000 loan to the Travelers Indemnity Company. I'm here today to present a motion to approve the grant of summary judgment to the appellant, The Travelers Indemnity Company, and denial of summary judgment to Ezrasons, and instead to grant summary judgment to Ezrasons, and that is an endorsement called the Processing and Warehousing Endorsement, and that endorsement provides coverage for goods that are in warehouses and processing locations in most locations in the United States and Canada, including North Carolina. The endorsement then goes on to provide that there's a $250,000 limit for losses at those locations, unless the location is approved. I gather there was no discussion about what the parties intended by the reference to Shamad Warehouse, 371 Grant Street, between the insurance company and the insurer? There's nothing in the record regarding that, Your Honor, and it is our position that the And what about the limit of the insurance of $600,000 and for the one up above, it's $6 million? Is there anything in the record that shows the thought process that went into picking $600,000 versus $6 million, any contemplation of what was being covered, anything like that? I don't believe there's anything in the record, but I believe the process is, you'll see there are a number of warehousing endorsements. This is the 16th, and over time, the locations and limits changed, so presumably there was some conscious discussion and consideration as different goods were stored in different places. Well, I'm saying presumably, but there's a number of locations, and there's nothing in the record. There was an opportunity for discovery, and no one put anything in. The parties agreed, given the amount at stake in the case, that they would proceed to summary judgment motions without taking discovery on initial discovery. The District Court found the contract to be unambiguous. Do you want to talk about that? Sure. Yes, I would, Your Honor. Thank you. I would submit that the contract is unambiguous. In Ezrason's case, there was a number of locations, and I would say I'm in favor, because the Chamad Warehouse Inc. must mean something in that schedule. The schedule is Chamad Warehouse Inc. at an address. At an address that doesn't exist. At an address that doesn't exist. Seems like you could almost end the ambiguity conversation there, wouldn't you? I think you would say that if that address doesn't exist and there's an ambiguity, we must look outside the policy, because every portion of the policy must be given meaning, and the parties clearly intended to cover at a specific amount. You started by saying that it's unambiguous in your favor. Now you're saying it's ambiguous. Maybe you should start with the proposition of whether it's unambiguous in the direction of the District Court. Yes, sure. Your Honor, thank you. The second subject is whether it's unambiguous in your favor. Thank you, Your Honor. So yes, because the Chamad Warehouse Inc. is not a building. That's the name of the business at an address. The name of the business at an address. And that unambiguously conveys the intent to cover the Chamad Warehouse Inc. as a covered location. This part of the schedule talks about locations, not buildings. It doesn't say anything about covered buildings. It's approved locations. And when you read it with the rest of the endorsement, paragraph 5, warehouses and processing centers at approved locations are covered. Nothing limited to one warehouse at an approved location. In this case, I would say, with all due respect, that Chamad Warehouse Inc. must be afforded reason here. It must be afforded meaning here. But the record doesn't indicate that each of those buildings had an address? The record indicates that at least two of them have an address, Your Honor. They also are part of one tax parcel that is known as 56 Branch Street. The parties agree that 371 Branch Street was renumbered as 56 Branch Street. Does the record show anything about the number of entrances to the different buildings from the street? There's something to the effect that there's a chain-linked fence that encircles the entire property. That can't be exactly right because that would mean that there's no gate anywhere and you simply can't get into it or get out of it. But there must be... Does the record show anything about where there are and where there aren't entrances? Yes, Your Honor. There are three chain-linked entrances at different locations where there are... I don't think they correspond with the front of the buildings necessarily. There are different streets that intersect that location. It's a pretty decent-sized parcel that has the three warehouses on it. But there are definitely gates, different entrances. But that warehouse is the Chamad Warehouse. That's the Chamad Warehouse. It has three buildings and our position is that there is one... You say that warehouse is the Chamad Warehouse. You mean that plot? That complex is known as the Chamad Warehouse. It's one parcel, one location with three warehouse buildings. It's indisputable that the building in which the fire occurred was a warehouse. The question and the answer is, is the approved location is merely that warehouse or is the approved location the plot on which that warehouse sits? Counsel, are you familiar with a contract law concept of latent ambiguity? Yes, Your Honor. So it's... And Judge Posner has written about this extensively. He always talks about the contract case we all read in 1L, Year of Raffles v. Clear as a Button, Judge Posner says, except it turns out there's more than one ship peerless. And that is described in lots of literature and in some New York law cases and some Second Circuit cases as a latent ambiguity. We look to objective evidence, not the what did the parties have in mind, but objective evidence which tells us that there's two ships peerless or here. I think in your case you would say there's objective evidence that says there's two ships peerless or that says this address refers to the whole plot of land with multiple buildings. Isn't that a... Doesn't that concept, which isn't talked about in your briefs, isn't that what's going on here? Well, Your Honor, I would say in the alternative there's an ambiguity here at a minimum as to what that means. Is it as we submit the parcel of 56 Branch Street or as the traveler submits the building that is closest to 56 Branch Street? And we would say the evidence and the tenets of construction interpreting the ambiguities against the insurer in favor of the insured would require that decision and that ambiguity to be interpreted in favor of the insured. Okay. Thank you, Counsel. You do have two minutes reserved for rebuttal and we'll hear from opposing counsel Murphy. Thank you. Good morning, Your Honor, as I may please the board of travelers and Denny Company, the first thing I'd like to get out is the two most important cases cited in this brief involve Judge Chin at the Southern District of New York and Judge LaValle in a summary judgment. The first case by Judge Chin was captioned a Royal Insurance versus Sportswear. It is almost on all fours with this case. Judge Chin in that case in 2000 said there was no ambiguity with respect to the warehouse endorsement, which is substantially similar to warehouse endorsement here. Second case, Judge LaValle, you were on a panel with Judges Newman, Cooler and yourself, Your Honor. That case was named Laptop Plaza versus Star. This court upheld a motion for summary judgment. That's a completely different issue. That's a question of whether the place where the goods were stored was a warehouse and it was a trailer, not a warehouse. We don't have that issue here. There's no dispute here that the place where the goods were stored was a warehouse. But the issue is whether the contract unambiguously made clear that in saying Chamad Warehouse, Inc. is the approved location, whether that meant only one of the warehouses on that plot or could include any of the three warehouses. Thank you, Judge. The reason I cited that case was for the proposition in a marine cargo policy, approved locations mean warehouse buildings. And that's why I referenced those two cases. We have a warehouse building here. The Chamad property, which my front counsel was talking about, has three warehouse buildings. It's a little peculiar because... Would it have made sense for Ezra Sins to purchase insurance for the warehouse of this property and then to only have one out of three buildings in mind? I'm very glad you asked that, Your Honor. The decision on what warehouses... Would that have made any sense? I think they probably made a mistake, Your Honor. But that's not on travelers. Travelers underwrites and will consider approving a certain warehouse building when their customer asks them to. And then there's some burden on travelers to go... I mean, I know the record says travelers was denied the opportunity to underwrite this, but wouldn't travelers want to figure out what it is insuring? Your Honor, I agree with everything you just said. The first thing is for Ezra Sins broker to ask us what to insure. We'll underwrite. We'll look at any warehouse you want. We'll go around the country, including the $6 million warehouse in California. We'll take a look. What they asked us to look at was the Branch Street Warehouse, and that's what was underwritten. That's not what the contract says, that the approved location is Chemad Warehouse, Inc. It doesn't say... It doesn't refer to... Nobody thinks when they read Chemad Warehouse, Inc. that this can only be one building. I mean, you know, companies have addresses, and those addresses often encompass many, many buildings that can be loosely stated to be at the same address, even if various buildings in the complex are technically a particular number at a particular street. What I would answer to that, Judge LaValle, is no court, and I've looked and I've been around, no court has ever held that a company name constitutes a location for the purposes of a warehouse. Why would you, Hartford, why would you accept the policy when I completely understand why you would want to be particular about the particular warehouse and be sure that it's up to snuff and has the proper protective facilities and sprinklers and all that stuff? Why would you accept a contract that gives the approved location as the name of a company, Chemad Warehouse, Inc., as opposed to referring to a particular building? My answer to that, Your Honor, and I've considered the question, is it simply identifies who owns the other one? Yes, when you follow the 56 French Street, let's see, 371 or 56, the address is changed. You're not relying on the fact that it says 371, are you? No, no, no, Your Honor. I mean, I thought the district court opinion was a little unclear whether she was just saying, well, it says 371, this is about 1386 Virginia, so. I think that's right, Your Honor, and being as fair as I know how to be, she's saying the French Street warehouse is different than the Virginia Road warehouse. So you accept that 371 refers to 56 French? Absolutely, and I will also represent the court if the French Street warehouse burned down, it would be covered by a $600,000 limit. So there's no, there were two approved warehouses, it's just that none of those, neither of those two burned down in this case. It's hard to see, though, that there's not a, there is a factual dispute here, and I think you could, I've sort of gone back and forth between thinking about it two ways. Is there a, what I spoke with your colleague about, a latent ambiguity for purposes of the assessment of the meaning of the contract, or a factual dispute as to what constitutes that address in the real world? It seems to me that if you want to say the contract is sort of clear on its face, at least there was a factual dispute, which the district court laid out. The party's dispute, the address of the sole warehouse that was destroyed by the fire defendants say it's the warehouse building just at 56, and plaintiff says it's all three buildings within the 19.03 plot. District Judge resolved at least that factual dispute, didn't she? If I'm wrong, I think she did, but I don't think there's any dispute that all three, there's three warehouses on this parcel, okay? I don't think it's in dispute. And they all have their own street addresses. And, you know, it's kind of actually neat. These satellite maps from the tax assessor down in Marion County, North Carolina, you can see the addresses on the rooftops. You know, I can look at my house and I can see two, but it shows. The Virginia Road address is the company, Chemad Warehouse, Inc. Its address is 371 Branch Street or 56 Branch Street. I think that's correct. Yeah. Couldn't a reasonable person interpret this to mean the goods at the business's facility at 371 Branch Street are covered? I'll try to answer your question directly. I would say the answer is no. It's not a reasonable interpretation. I'll tell you why. And there's law cited in my brief, okay? Whether this is reasonable or unreasonable, I guess in this context is what do they do in the marine insurance business? What is reasonable? You know, they're insurance brokers and insurance solutions here in New York. They do marine insurance. This is their job. What do they understand? Was it reasonable for them to think that everything, every structure on this 19-acre parcel should be, you know, should be covered? The answer to that is no way. That's not how marine insurance is done. This is a sophisticated player. And even if they weren't, they have, you know, an experienced New York cargo marine insurance broker. They know that it's the buildings that are insured, not a parcel of land. And I'll say for the last time, there is no case, and I've looked everywhere, that would ever say that an entire vast parcel of property constitutes an approved warehouse. You know, here I would suggest that Judge Schofield got it right. He said, you know, there are two locations, and then it says, in warehouses. What about the ship fearless? When the ship fearless came before the court, you could say, the judge would say or a lawyer would say, there's no case in which there are two ships fearless. Oh, right. Saying that there's no case isn't really all that helpful. I'd like to show you, I'm a maritime attorney for 26 years, so I very much appreciated the reference. I mean, that is fair enough, but I think it's, we have cases in our brief, and it's what's reasonable in the particular industry or trade, okay? Marine insurance is, and you probably all know it's a very particular industry. The terms they use sometimes go back hundreds of years, okay? So their marine insurance broker knew full well, knew full well, and it's not an issue of fact, that the approved warehouse endorsement It's the only way it works. Do you think we look to that industry standard to determine whether there's an ambiguity in the contract? I don't think you have to get there. I'm trying to answer a question as best I can. I don't. I mean, you've seen the language, but I Suppose we do get there, and we conclude there is ambiguity, then where does your analysis go? Okay, thanks for asking. Here's what I would say. All right, my learned friend is correct. He gave me a call and said, let's do this on cross motions for summary judgment so we can save money, okay? And I said, okay, I don't think that's an issue. It's a little ironic we're here, and I'm very happy to be here arguing the Second Circuit Court of Appeals, okay, but we're not saving money anymore. To answer Judge Chin's question, if we go back, you know, we're going to depose underwriters, you know, or industry professionals. I don't think there's any doubt about this, but to answer your question, you know, we don't get to extrinsic evidence if I'm right, okay, or if Judge Schofield is right, more importantly. If we do, then we get into the extrinsic evidence. What I would say is, well, another way to decide it is this is the record, the parties are stuck with this record, and what happens if there's ambiguity on this record and both sides want it resolved? How would you resolve it? It's an interesting question because Judge LaValle said, and I was listening, he said, you know, both sides claim that this wording is unambiguous, right, and I stand by that. I think, in fairness, I think that they're going back and forth. It is or it isn't, you know, depending on what they want. You're fighting the hypo, though. The hypo is assume we conclude it's ambiguous and the record is closed. What would you look to in this record to argue that the parties intended to cover only 56 branch with the higher amount? I understand. Thank you, Judge, for the question. You say both sides argue that it's unambiguous. Right. But both sides have that as their number one favorite position. Understood. Each side says it's ambiguous rather than it be unambiguous in favor of the other side. Understood. So it's not as if nobody tolerates the idea that there's any ambiguity here. Okay. Understood. To the hypothetical, and we hedged our bets a little, if that's an appropriate thing to say, I don't think we need extrinsic evidence, but we thought it would be helpful to the court to put on a declaration by our traveler's lead ocean marine underwriter. He heads all marine underwriting for the New York region. Okay. He's got a team. So all the cargo that travelers covers into the New York Port of New Jersey, he's the guy. His name is Frank Hardin. As to the fact that this was never, we never, we were never given the opportunity, nor did we ever approve the Virginia Road warehouse. There's no disagreement about it. I think we're all in agreement there. But he explains why it couldn't have been approved. And I think that it goes on, I thought it would be very helpful, but the things they consider and the steps they go through, starting with an application from the interior saying, hey, we want this warehouse approved. Please take a look at it. We didn't even get there. So to answer your question, with the record closed because, you know, we decided to go discover a new, you can go back to the Hardin declaration because he's probably the only industry expert with, you know, with evidence in the record. And he put in two declarations. I think it will be educational, but it's how this works. All right. Thank you, counsel. Thank you. And Mr. Giordano, you have two minutes. Thank you, Your Honor. I'd like to address the issue if the court has to get to the deciding and ambiguity and what record it should look to. I agree fully that the record is closed at this point and the extrinsic evidence before the court is what it should make its determination on. I would urge the court not to afford any weight to the declaration of Mr. Hardin. If you read Mr. Hardin's affidavit or declaration, he joined Travelers in 2013, which was four years after this policy first issued. So I would submit that he lacks the requisite personal knowledge under Federal Rule of Evidence 701 to opine on this issue even as a lay witness. He talks generally and not even specifically about what happened here. I think the absence of any reference to Travelers' specific underwriting speaks volumes here. Travelers says that it was not asked to underwrite this building that it issued. Okay. So maybe you go back to the district court, you make arguments. But presumably as plaintiff, you would make arguments about what supports your interpretation. Correct. And what I would say to that, Your Honor, is we have, again, the law says that ambiguities are interpreted against the insured in accordance with the reasonable expectations of the,  in accordance with the reasonable expectations of the insured. Here, we have a parcel that is known as 56 Branch Street that includes all these buildings. That's the way the taxes are paid on it. That is a reasonable interpretation. If there's more than one interpretation. Isn't it correct, furthermore, that the district court erred in considering the evidence that you offered with respect to the name of the property, to consider it considered that inadmissible hearsay? It wasn't offered for a hearsay purpose of proving the truth of what's asserted in the declaration. It was asserted for the purpose of showing that people viewed that property as being known as the particular address, 371, whatever it was. Your Honor, what I would say, if I was less than clear, is there were some news reports that were in the record, and that we argued was submitted for the purposes of showing how the community understood that. But as far as the tax records go, those are trusted government records, and the court can take judicial notice of those at any time under federal rule of evidence 201. All right. But we're not, there's nothing that requires us to resolve who wins the case, or if we find ambiguity that requires the district court to reach that question on this record. Isn't that right? Up till now, you've operated on the principle that there'll be no, on the understanding that there'll be no discovery, and you'll do it by competing motions for summary judgment. But if they leave an ambiguity, if that's what we decide, you would have to go further. Isn't that right? Your Honor, we would submit that on this record, there's enough for the court to decide the ambiguity based on the record in Ezrason's appellant without any need for further discovery. And that you rely for that purpose on the proposition of reading ambiguous contracts against the insured? Yes, Your Honor, against the insured, and in accordance with the reasonable expectations of the policyholder. We've submitted declarations as well from Ezrason's, which is putting these goods in a third-party warehouse. It's not on Ezrason's property. These goods are flowing to a warehouse that Ezrason's does not visit or control. It expects insurance coverage for the goods that it has at this warehouse. It's not directing them into one building or another. It would not make sense for it to insure only a portion of the goods that happen to be in one building and not the others. So I would submit that in addition to the interpreting the ambiguity against the insurer, the corollary doctrine of affording the reasonable expectations of the insured's credence in that circumstance also applies. All right. Thank you to both counsel for your arguments. I'll take the matter under submission. Thank you very much.